UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL LAUDERDALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-CV-2010-JAR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for summary judgment. The motions are fully briefed and ready for disposition.[1]

**Factual background**[2]

The relevant facts are not in dispute. Plaintiff filed this action pursuant to 26 U.S.C. § 7426 to challenge the Internal Revenue Service's ("IRS") levy of $26,914.97 held in escrow by Integrity Land Title Insurance Company, Inc. ("Integrity") in connection with his purchase at a short sale of the property commonly known and numbered as 16691 Kehrsgrove Dr., Chesterfield, MO 63005 (the "Property"). At the time of purchase, the Property was encumbered

---

[1] The parties filed their motions for summary judgment on December 4, 2014. (Doc. Nos. 15, 18) Defendant United States filed its opposition to Plaintiff's motion on January 5, 2015 (Doc. No. 20); Plaintiff filed his memorandum in opposition to the United States' motion on January 15, 2015. (Doc. No. 23) Plaintiff filed his reply to Defendant's opposition on January 16, 2015. (Doc. No. 21) United States did not file a reply to Plaintiff's opposition.

[2] The facts are taken from the Government's Statement of Uncontroverted Material Facts (Doc. No. 17), Response to Plaintiff's Statement of Uncontroverted Material Facts and Statement of Additional Uncontroverted Material Facts (Doc. No. 20-1), Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 19-1), and Plaintiff's Responses to the United States' Statement of Additional Material Facts. (Doc. No. 22) Because Plaintiff did not respond to the Government's Statement of Uncontroverted Material Facts, he is deemed to have admitted all the facts therein. E.D. Mo. L.R. 4.01(E). See Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877).

by Federal Tax Lien, serial number 868742112 dated May 17, 2012 and recorded June 1, 2012 in the amount of $23,834.99, plus penalties and interest. The delinquent taxpayer is Stephen A. Kincade.

Pursuant to a court order dated August 20, 2012, the Property was conveyed by attorney Alan Weber on behalf of Mr. Kincade to Amelia Kincade via Quit Claim Deed dated September 13, 2011 [sic] and recorded September 20, 2012 in Book 20167 page 1780 of the St. Louis County Records. Mr. Kincade retained no interest in the Property. Nevertheless, the conveyance did not affect the government's lien. See United States v. Bess, 357 U.S. 51, 56 (1958). The short sale of the Property closed October 30, 2012 and the Property was conveyed by Amelia Kincade to Plaintiff via general warranty deed. At closing, Plaintiff signed a HUD-1 Statement, certifying that it was "a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction." The HUD-1 listed a disbursement of $35,752.49 for "Federal Tax Lien Escrow to United States Treasury." (Defendant's Statement of Uncontroverted Material Facts ("SUF"), Doc. No. 17 at ¶ 15)

In connection with the purchase of the Property, and pursuant to an Escrow and Indemnity Agreement dated October 31, 2012 ("Escrow Agreement," Doc. No. 17-10) between Plaintiff and Integrity, Plaintiff placed $38,859.85 in escrow with Integrity. Mr. Kincade was not a party to the Escrow Agreement and had no interest in the escrowed funds. Pursuant to the terms of the Escrow Agreement, Plaintiff had "up to and including January 26, 2013 to obtain a release of the Liens from the appropriate taxing authority(ies). If the Liens have been released by January 26, 2013, Integrity shall release the Escrow Funds to [Plaintiff]. If the Liens have not been released by January 26, 2013, Integrity shall have the right to pay the Liens from the Escrow Funds." (Escrow Agreement at ¶ 6) Plaintiff did not obtain a release of the federal tax

lien on or before January 26, 2013. (Defendant's SUF at ¶ 20)

Under the Escrow Agreement, Plaintiff agreed that Integrity could, "without any demand or notice to [Plaintiff] whatsoever," use the escrowed funds "to obtain release of the Liens." (Defendant's SUF at ¶ 21) The Escrow Agreement further provided that "[w]here, in Integrity's absolute subjective opinion, all matters for which Integrity is indemnified … are resolved in such a manner that Integrity can have no further liability," then Integrity "may, at Integrity's sole option, return, or order, such monies or security as may have been deposited by [Plaintiff] hereunder to [Plaintiff]." (Id. at ¶ 22)

On or about December 13, 2012, Plaintiff filed an Application for Certificate of Discharge of Property from Federal Tax Lien (Form 14135). His discharge application was denied by letter dated January 8, 2013 for the reason that it "was not submitted prior to the closing that took place on 10/30/2012. As a result, the Federal tax lien still attaches to the real property and the liability must be paid in full to resolve this issue. Once the liability is paid, the Federal tax lien will release automatically, so a discharge application is not required." (Doc. No. 19-6)

On or about February 20, 2013, the IRS issued a Notice of Levy in the amount of $26,914.97 to Integrity to levy the escrow funds. On March 28, 2013, Plaintiff filed an Administrative Wrongful Levy Claim under I.R.C. § 6343(b). On April 23, 2013, the IRS denied Plaintiff's claim for the reason that the IRS had not received any funds from the sale and the Notice of Federal Tax Lien was not extinguished on the Property. (Doc. No. 19-9)

On or about May 15, 2013, Integrity paid the federal tax lien with the escrowed funds. The IRS released the federal tax lien on June 5, 2013 because it was fully paid.

Plaintiff renewed his Administrative Wrongful Levy Claim by letter dated June 14, 2013.

By letter dated June 19, 2013, the IRS again denied Plaintiff's claim because it "fails to establish that the levied property belongs to someone other than Stephen Kincade or that you have an interest in the property that is superior to the lien interest of the United States." (Doc. No. 19-11)

Plaintiff then submitted a Collection Appeal Request to the IRS dated July 29, 2013. By correspondence dated August 19, 2013, the IRS denied Plaintiff's request, stating that because the HUD-1 settlement statement indicated that the funds were set aside "in payment of the federal tax lien," the IRS "took the position that the funds ceased to be the property of [Plaintiff] at the time the sales contract was completed" and that "the Service properly issued the levy to attach the funds in escrow which were specifically identified for payment of the tax to release the property from the attachment of the lien. Money in escrow can be attached by a levy." (Doc. No. 19-13)

Plaintiff filed an administrative claim for return of the levied funds, but did not file an administrative claim for damages pursuant to I.R.C. § 7426(h)(2). (Defendant's SUF at ¶ 27)

**Legal Standard**

Summary judgment is proper if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (internal citations and quotation marks omitted). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. <u>Ludwig v. Anderson</u>, 54 F.3d 465, 470 (8th Cir. 1995).

**Arguments of the parties**

In support of his motion, Plaintiff argues the IRS levy of the escrowed funds was wrongful because Mr. Kincade, the delinquent taxpayer, had no ownership interest in either the

Property at the time of the short sale or the escrowed funds. (Doc. No. 19 at 3-4) Plaintiff further argues that the Government's only recourse was to foreclose on its lien, and not through a levy of an escrow account in which the delinquent taxpayer had no interest. (Id. at 5-6) Lastly, Plaintiff argues that IRS agents intentionally and/or negligently disregarded provisions of 26 U.S.C. § 6331(j)(1)[3], thereby entitling him to statutory damages of $100,000 under 26 U.S.C. § 7426(h).[4]

---

[3] 26 U.S.C. § 6331 provides:

> (j) No levy before investigation of status of property.--
>
> (1) In general.--For purposes of applying the provisions of this subchapter, no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of such property has been completed.
>
> (2) Elements in investigation.--For purposes of paragraph (1), an investigation of the status of any property shall include--
>
> (A) a verification of the taxpayer's liability;
>
> (B) the completion of an analysis under subsection (f);
>
> (C) the determination that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to such liability; and
>
> (D) a thorough consideration of alternative collection methods.

Note that section 6335 concerns sales of seized property. 26 U.S.C. § 6335.

[4] 26 U.S.C. § 7426(h) provides in pertinent part:

> (1) In general.--Notwithstanding subsection (b), if, in any action brought under this section, there is a finding that any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregarded any provision of this title the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000 in the case of negligence) or the sum of--
>
> > (A) actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent disregard of any provision of this title by the officer or employee (reduced by any amount of such damages awarded under subsection (b)); and
> >
> > (B) the costs of the action.
>
> (2) Requirement that administrative remedies be exhausted; mitigation; period.--The rules of section 7433(d) shall apply for purposes of this subsection.

(Id. at 6-7)

The Government maintains that under the clear terms of the Escrow Agreement, Plaintiff had no right to the escrowed funds and, therefore, no property interest in the funds at the time of the levy. (Doc. No. 16 at 3-5; Doc. No. 20 at 3-6) Even if Plaintiff had a property interest in the levied funds, however, the Government argues the levy was not wrongful because the federal tax lien attached to the funds, citing Venture Bank, Inc. v. United States, 2013 WL 214399 (D.Minn. Jan. 18, 2013), a case involving a levy on funds held in escrow form the sale of a foreclosed property. (Doc. No. 16 at 5-8) In addition, nothing in the Escrow Agreement required Integrity to await a foreclosure action before paying off the tax lien with the escrowed funds. (Doc. No. 20 at 5-6 and n. 2)

Finally, the Government argues Plaintiff fails to state a claim under 26 U.S.C. § 7426(h) because he does not identify any "officer or employee" of the IRS, identify "any provision" of the IRS Code that was disregarded, explain how the unspecified IRS employee acted negligently, recklessly or intentionally in disregarding the unspecified provision, or explain how and in what amount he was harmed. Even if Plaintiff stated a claim, the Government argues it is entitled to summary judgment because Plaintiff has not exhausted administrative remedies or proven any damages. (Doc. No. 16 at 8-13)

**Discussion**

"In 26 U.S.C. § 7426, Congress has given third parties the right to bring an action against the United States when it is shown property was wrongfully seized pursuant to levy by the IRS." Security Counselors, Inc. v. United States, 860 F.2d 867, 869 (8th Cir. 1988) (quoting Arth v. United States, 735 F.2d 1190, 1192-93 (9th Cir.1984)). In a wrongful levy action, the plaintiff carries the initial burden of showing some interest in the property in order to have

standing. Id. See also Scoville v. United States, 250 F.3d 1198, 1201 (8th Cir. 2001); Bremen Bank and Trust Co. v. U.S., 131 F.3d 1259, 1263 (8th Cir. 1997). Once the plaintiff has made the initial showing, the burden then shifts to the government to prove a "nexus" between the property and the delinquent taxpayer by substantial evidence. Id. See also, Schnarr v. United States, 795 F.Supp. 934, 936 (E.D.Mo. 1992). If the government proves "a nexus by substantial evidence," the plaintiff has "the ultimate burden of proving the levy was wrongful." Scoville, 250 F.3d at 1201.

State law governs questions of who has or had an interest in the property at the time of the levy and the nature of that interest. Bremen Bank, 131 F.3d at 1263 (citing Aquilino v. United States, 363 U.S. 509, 513-14 (1960)). Thus, the Court must apply Missouri law to determine the nature of the property interest in the escrowed funds. Under Missouri law, funds held in escrow by a title insurer are "the property of the person or persons entitled to them under the provisions of the escrow … agreement." Mo.Rev.Stat. § 381.022.2(1).[5]

Pursuant to the Escrow Agreement, Integrity was only obligated to release the funds to

---

[5] Mo.Rev.Stat. § 381.022.2(1) provides as follows:

A title insurer, title agency, or title agent not affiliated with a title agency may operate as an escrow, security, settlement, or closing agent, provided that all funds deposited with the title insurer, title agency, or title agent not affiliated with a title agency, pursuant to written instructions in connection with any escrow, settlement, closing, or security deposit shall be submitted for collection to or deposited in a separate fiduciary trust account or accounts in a qualified depository institution no later than the close of the second business day after receipt, in accordance with the following requirements:

(1) *The funds regulated under this section shall be the property of the person or persons entitled to them under the provisions of the escrow*, *settlement, security deposit, or closing agreement* and shall be segregated for each depository by escrow, settlement, security deposit, or closing in the records of the title insurer, title agency, or title agent not affiliated with a title agency, in a manner that permits the funds to be identified on an individual basis and in accordance with the terms of the individual written instructions or agreements under which the funds were accepted …

(Emphasis added.)

Plaintiff if he was able to obtain a release of the federal tax lien by January 26, 2013. (Doc. No. 17-10 at ¶ 6(a)) The IRS did not release the lien. Thus, under the Escrow Agreement, Integrity had the right to pay the lien from the escrow funds. Plaintiff also agreed that any funds deposited with Integrity could be used by Integrity to discharge any liability for which it was indemnified under the Escrow Agreement, including obtaining release of the Liens against the Property, "without any demand or notice to [Plaintiff] whatsoever." (Id. at ¶ 11) The Escrow Agreement also provided Integrity with the sole option to return escrowed funds to Plaintiff. (Id. at ¶ 12) ("Integrity may, at integrity's sole option, return, or order, such monies or security as may have been deposited by Indemnitor hereunder to Indemnitor.") Nothing in the Escrow Agreement required Integrity to await a foreclosure action before paying off the tax lien with the escrowed funds.

Thus, under the clear terms of the Escrow Agreement, Plaintiff cannot establish his entitlement to the escrowed funds at the time of the levy and, therefore, had no interest in them. The issue of Mr. Kincade's interest in the escrowed funds levied upon is not relevant to the inquiry at this point. Plaintiff knowingly purchased an investment property encumbered by a federal tax lien. In order to close on the property, Plaintiff entered into an agreement with his title insurer to place money in escrow sufficient to pay the federal tax lien if necessary. The funds ceased to be Plaintiff's property at the time the sales contract was completed and Plaintiff realized ownership of the Property. See Matter of Newcomb, 744 F.2d 621, 624 (8th Cir. 1984) (internal citations omitted) ("When property is delivered in escrow, the depositor loses control over it and an interest in the property passes to the ultimate grantee under the escrow agreement."). Because Plaintiff has failed to meet his initial burden of showing some interest in the property levied on, Plaintiff's wrongful levy suit fails as a matter of law.

Plaintiff argues the Government is no different from a mortgage lender or bank in that its only remedy following a sale of real estate is through a lien foreclosure, and that due process requires the Government seek payment of its tax debt through a lien foreclosure - not through levy of an escrow account in which the delinquent taxpayer has no interest. (Doc. No. 19 at 5-6) Unlike other lienholders, however, "[t]he Government may enforce liens either through administrative collection methods such as levy … or … through a civil action … to foreclose the tax lien." United States v. O'Callaghan, 500 Fed.Appx. 843, 847 (11th Cir. 20120). Moreover, the constitutionality of the levy procedure "has long been settled." U.S. v. National Bank of Commerce, 472 U.S. 713, 720-721 (1985) (quoting Phillips v. Commissioner, 283 U.S. 589, 595 (1931)). See also, 51 S.Ct., at 611. See also G.M. Leasing Corp. v. United States, 429 U.S. 338, at 352, n. 18 (1977).

Finally, Plaintiff's claim for damages proximately caused by the alleged negligent, reckless, or intentional disregard of a provision of the Internal Revenue Code by an IRS employee or officer under 26 U.S.C. § 7426(h) fails. This recovery is allowed only if Plaintiff exhausted administrative remedies by filing a claim for damages with the IRS.[6] See 26 U.S.C. § 7426(h)(2). It is undisputed that Plaintiff did not do so. (See Defendant's SUF at ¶ 27) Plaintiff requests his claim for damages be stayed to allow him to file a claim with the IRS (Doc. No. 23 at 8); however, in light of the Court's determination that Plaintiff had no interest in the escrowed funds and thus lacked standing to assert a claim for wrongful levy, his request will be denied.[7]

For the foregoing reasons, the Court will grant the Government's motion for summary judgment and deny Plaintiff's motion for summary judgment.

---

[6] The content of and procedures for filing such a claim are set out in Reg. § 301.7426-2(d).

[7] In any event Plaintiff cannot demonstrate that he suffered any damages. Once the lien was paid and released, Plaintiff resold the Property for a substantial profit. (See Defendant's SUF at ¶ 28)

Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion for Summary Judgment [15] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [18] is **DENIED**.

A separate Judgment will accompany this Memorandum and Order.

                                          **JOHN A. ROSS**
                                          **UNITED STATES DISTRICT JUDGE**

Dated this 15th day of May, 2015.